UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES STEPHAN ZIMMERMANN,

        Plaintiff,                      Case No. 1:11-cv-1178

v.                                           Honorable Robert J. Jonker

STATE OF MICHIGAN et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff James Stephan Zimmermann presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Pugsley Correctional Facility (MPF). He sues the State of Michigan, the MDOC, Corizon Health Services,[1] and the following MPF employees: Dr. Robert Crompton, Physician Assistant (PA) Quinn LaFleur, Nurses Ed Pearson and Jeannie Stephenson, and Health Unit Manager Kim Wright.

Plaintiff alleges that, before he was sent to prison, his pacemaker was being monitored by his cardiologist on a monthly basis through a telephonic monitoring system. In addition, Plaintiff went to the cardiac clinic for a pacemaker check every three months, and he saw his cardiologist every six months. After arriving at MPF, Plaintiff informed Defendant Dr. Crompton that he had not had his pacemaker checked in awhile and that his cardiologist had required a monthly telephonic check. Crompton informed Plaintiff that his pacemaker required a check only once each year. Plaintiff was advised to kite the medical department if he had chest pains.

On July 12, 2011, Plaintiff saw Defendant PA LaFleur, and he explained his prior treatment regime for checking his pacemaker. LaFleur advised Plaintiff that he only needed to have his pacemaker checked once each year. Plaintiff stated that LaFleur's assessment was not what his doctor had prescribed. LaFleur advised Plaintiff to file a grievance if he wished. Plaintiff filed a grievance on July 14, 2011, complaining about the failure to provide monthly pacemaker checks. Defendants Pearson and Wright denied the grievance at Step I. According to the grievance response

---

[1] Corizon Health, Inc. was formerly known as Prison Health Services, Inc. and PHS Correctional Healthcare. The company holds the contract for Michigan prisoner health care services from February 10, 2009 to March 31, 2012. (*See* State of Michigan contract and change notices, http://www.michigan.gov/documents/buymichiganfirst9200147_266870_7.pdf.)

attached to Plaintiff's complaint, Plaintiff received a pacemaker check on February 23, 2011, and at that time his pacemaker had 1.5 years of battery life. (Attach. to Compl., docket #1-1, Page ID#18.) Plaintiff also has been monitored in the cardiac chronic care clinic, and his visit with LaFleur on July 12, 2011 was part of that monitoring. Petitioner appealed his grievance denial to Step II. Defendant Stephenson reviewed the grievance on August 17, 2011, concluding that the grievance had been properly resolved at Step I. The Step II grievance response noted that Plaintiff was enrolled in and followed by medical personnel in three chronic care clinics: cardiac, endocrine, and gastrointestinal. Plaintiff alleges that he filed a Step III grievance in August, but he never received a response.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs when they failed to provide the monthly pacemaker monitoring he received outside of prison. In addition, he alleges that he has not seen a cardiologist for approximately a year, and Defendants are deliberately indifferent to his need for an off-site cardiology referral. Further, Plaintiff claims that he is a third-party beneficiary to the State of Michigan's contract with Corizon Health Services and that Corizon is in breach of that contract. For relief, Plaintiff seeks treatment from his personal cardiologist, together with compensatory damages.[2]

---

[2] Plaintiff also alleges that he has not seen an endocrinologist for his ongoing thyroid problem, notwithstanding the fact that his thyroid levels are not always well controlled. In addition, he alleges that he had tubes in his ears when he came to prison in 2007, and he has had numerous earaches and infections, but he has not been referred to an ear, nose and throat specialist. Further, he complains that he has hemorrhoids, but he has not been referred for surgery. Notwithstanding these brief references to other problems, however, Plaintiff expressly states that he is filing his complaint solely to address the issues surrounding his cardiac care. (Compl., docket #1, Page ID#6.) Moreover, Plaintiff fails to identify any Defendant who is responsible for these additional complaints about his health care. For both reasons, the Court declines to address Plaintiff's other health allegations.

**Discussion**

    I.       Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the State of Michigan or the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

    II.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     **Eighth Amendment**

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment when they failed to check his pacemaker monthly and failed to refer him to his personal cardiologist. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Here, Plaintiff unquestionably has received medical treatment. He acknowledges that he saw Dr. Crompton in May 2011 and PA LaFleur on July 12, 2011. In addition, according to the exhibits Plaintiff has attached to the complaint, Plaintiff had his pacemaker checked in February 2011 and is seen in the cardiac chronic care clinic on a regular basis to monitor his condition. Plaintiff does not complain that Defendants have ignored any symptoms he has reported, nor does he report that his pacemaker has problems. Instead, he simply disagrees with how frequently his pacemaker is checked. Nothing about Plaintiff's allegations suggests that any Defendant has been deliberately indifferent to a serious medical need.

### B. Grievance Responses

Defendants Pearson, Wright, and Stephenson are entitled to dismissal for an additional reason. Plaintiff fails to make specific factual allegations against them, other than his claim that they failed to properly respond to his grievances. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to

allege that Defendants Pearson, Wright or Stephenson engaged in any active unconstitutional behavior. Accordingly, for this additional reason, he fails to state a federal constitutional claim against them.

### C. State-Law Claim

In his second cause of action, Plaintiff alleges that Defendant Corizon Health breached its contract with the State of Michigan, and Plaintiff seeks to recover as a third-party beneficiary to that contract. Plaintiff's breach of contract claim is one of state law only. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over the state-law claim, the Court declines to exercise jurisdiction. The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits. *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). Plaintiff's state-law claim therefore will be dismissed without prejudice.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

       This is a dismissal as described by 28 U.S.C. § 1915(g).

       A Judgment consistent with this Opinion will be entered.


Dated:   November 23, 2011           /s/ Robert J. Jonker
                                             ROBERT J. JONKER
                                             UNITED STATES DISTRICT JUDGE